## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **MARK HARRIES,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:14-CV-2684-L** |
| | § | |
| **ANDREW STARK** | § | |
| **and NATHANIEL FOWLER,** | § | |
| **Individually,** | § | |
| | § | |
| Defendants. | § | |

## AMENDED MEMORANDUM OPINION AND ORDER

The court noticed several typographical errors in its Memorandum Opinion and Order issued on July 24, 2015, and, therefore, **vacates** the earlier opinion and **issues** this Amended Memorandum Opinion and Order in its place.  There is no substantive difference between the two opinions.

Before the court is Defendants' Motion to Dismiss For Lack of Personal Jurisdiction and *Forum Non Conveniens* (Doc. 14), filed September 29, 2014.  After careful review of the motion, pleadings, record, and applicable law, the court **grants in part** and **denies in part** Defendants' Motion to Dismiss For Lack of Personal Jurisdiction and *Forum Non Conveniens.*

## I.      Procedural and Factual Background

### A.      Procedural Background

Plaintiff Mark Harries ("Plaintiff" or "Harries") originally brought this action on February 18, 2014, in the 191st District Court of Dallas County, Texas.  On July 25, 2014,  the action was removed to federal court because complete diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs.

On August 29, 2014, Plaintiff filed his First Amended Original Complaint ("Amended Complaint") against Defendants Andrew Stark ("Stark") and Nathaniel Fowler ("Fowler") (collectively, "Defendants").  Plaintiff alleges claims for (1) misrepresentations and/or negligent misrepresentations, (2) fraud/fraud in the inducement, (3) negligence, and (4) unjust enrichment and/or quantum meruit against both Defendants. Plaintiff also requests equitable relief, prejudgment interest, exemplary and punitive damages, and attorney's fees.

### B.      Factual Background

This case arises from an alleged fraud regarding the purchase of a Texas student housing business.  Plaintiff alleges that, in January 2012, Stark contacted Harries about purchasing Harries's business.  Plaintiff alleges that Harries "is an individual in the State of Texas," and Defendants are residents of New York; however, according to Plaintiff, Stark made phone calls and contacted Harries in Texas.  *See* Pl.'s Compl. ¶ 1-3, 6.

Harries alleges that Stark made numerous representations to him to induce him to sign the agreement to sell his business. On March 11, 2012, Stark sent Harries a letter of intent, which Plaintiff contends contains some of the misrepresentations made by Stark.  *See* Defs.' App. 16. Plaintiff further alleges that additional representations in April and May 2012 induced him into selling his business.  This includes Stark's alleged promise that payment for the business would be made through a preferred return position to Harries's mother's estate trust from which Harries borrowed start-up money and operating capitol.  According to Plaintiff, Stark made this representation on behalf of him and Fowler.

 In June 2012, Plaintiff signed the LLC Interest Contribution Agreement ("Agreement") in which he sold his student housing business to Campus Evolution LLC ("Campus Evolution"), a

company owned by Stark and Fowler.   According to Plaintiff, the LLC Contribution Agreement did not contain the promissory note relating to the trust of Harries's mother's estate, as was promised, and Plaintiff argues that Stark had no intention of signing the promissory note.   Plaintiff contends that Stark and Fowler "were aware that they could not sign in their individual capacities," and "they intentionally did not sign this agreement individually."   Pl.'s First Am. Compl. ¶ 9.

Plaintiff alleges that, as part of the Agreement, Stark and Fowler permitted Harries to continue working on projects associated with the student housing business.   On August 7, 2013, Harries received an open e-mail solicitation for inquiries into a property near Sam Houston State University in Huntsville, Texas, and he responded by asking for publically available information at the university.   That same day, a real estate broker responded and copied Fowler on this response. Plaintiff alleges that Fowler was predisposed to terminate him and that Stark and Fowler wrongly accused him of competing with Campus Evolution and used this event to terminate him.

Defendants filed their motion to dismiss on September 29, 2014, pursuant to Federal Rule of Civil Procedure 12(b)(2), contending that the court lacks personal jurisdiction.   Alternatively, Defendants move to transfer this action to the Southern District of New York based on a *forum non conveniens* theory.   Defendants contend that neither Stark nor Fowler signed the Agreement with Harries and that they never made any representations or had any contacts with Plaintiff in Texas in their individual capacities, and, instead, they acted in their representative corporate capacities. Defendants additionally argue that this action arises from the Agreement and that the Agreement requires any action arising out of or in connection with it to be brought in New York.

**Amended Memorandum Opinion and Order - Page 3**

## II.   Rule 12(b)(2) - Standard for Motion to Dismiss for Lack of Personal Jurisdiction

On a motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing a prima facie case for the court's jurisdiction over a nonresident defendant.  *See Ham v. La Cienega Music Co.*, 4 F.3d 413, 415 (5th Cir. 1993); *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985).  When the court rules on the motion without an evidentiary hearing, the plaintiff may establish personal jurisdiction by presenting a prima facie case that personal jurisdiction is proper, *id.*; proof by a preponderance of the evidence is not required.  *International Truck and Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 556 (N.D. Tex. 2003) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 203 (5th Cir. 1989)).  The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery.  *Stuart*, 772 F.2d at 1192.  Uncontroverted allegations in a plaintiff's complaint must be taken as true, and conflicts between the facts contained in the parties' affidavits must be resolved in favor of the plaintiff.  *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990).  After a plaintiff makes his prima facie case, the burden then shifts to the defendant to present "a compelling case that the presence of some other consideration would render jurisdiction unreasonable."  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).

A federal court has jurisdiction over a nonresident defendant if the state long-arm statute confers personal jurisdiction over that defendant, and if the exercise of jurisdiction is consistent with due process under the United States Constitution.  *Ruston Gas Turbines, Inc. v. Donaldson Co., Inc.*, 9 F.3d 415, 418 (5th Cir. 1993).  Because the Texas long-arm statute extends to the limits of federal due process, *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990), the court must determine whether (1) the defendants have established "minimum contacts" with the forum state; and, (2)

whether the exercise of personal jurisdiction over the defendants would offend "traditional notions of fair play and substantial justice." *Ruston Gas*, 9 F.3d at 418 (*citing International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The "minimum contacts" prong is satisfied when a defendant "purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King*, 471 U.S. at 475.  The nonresident defendant's availment must be such that the defendant "should reasonably anticipate being haled into court" in the forum state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). This test "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" *Burger King*, 471 U.S. at 475 (citations omitted).   The "minimum contacts" prong of the inquiry may be subdivided into contacts that give rise to "specific" personal jurisdiction and those that give rise to "general" personal jurisdiction. *Marathon Oil Co. v. A.G. Ruhrgas*, 182 F.3d 291, 295 (5th Cir. 1999).  Specific jurisdiction is only appropriate when the nonresident defendant's contacts with the forum state arise from, or are directly related to, the cause of action. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984).  The exercise of general personal jurisdiction is proper when the nonresident defendant's contacts with the forum state, even if unrelated to the cause of action, are continuous, systematic, and substantial. *Id.* at 414 n.9.

In evaluating the second prong of the due process test, the court must examine a number of factors in order to determine  fairness and reasonableness, including: (1) the defendant's burden; (2) the forum state's interests; (3) the plaintiff's interest in convenient and effective relief; (4) the judicial system's interest in efficient resolution of controversies; and (5) the state's shared interest

in furthering social policies. *Asahi Metals Indus. Co. v. Superior Court*, 480 U.S. 102, 112 (1987). As noted above, "once minimum contacts are established, a defendant must present 'a compelling case that the presence of some consideration would render jurisdiction unreasonable.'" *Eviro Petroleum, Inc. v. Kondur Petroleum*, 79 F. Supp. 2d 720, 725 (S.D. Tex. 1999) (*quoting Burger King*, 471 U.S. at 277). In fact, "[o]nly in rare cases . . . will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Id*. (*quoting Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 231 (Tex. 1991)).

## III.     Analysis

### A.     Personal Jurisdiction

Defendants argue that they have no contacts with Texas in their individual capacities. They additionally contend that Plaintiff's fraud claims were not pleaded with specificity in accordance with Federal Rule of Civil Procedure 9(b) and, therefore, do not provide a basis for establishing specific jurisdiction. The court evaluates Stark's and Fowler's contacts with Texas separately.

#### 1.     Stark

##### a.     Stark's Minimum Contacts

The court determines that it has jurisdiction over Plaintiff's claims against Stark. As a general rule, the fiduciary-shield doctrine "prohibits the attribution of corporate acts to corporate officers." *General Retail Servs. Inc. v. Wireless Toyz Franchise, LLC*, 255 F. App'x 775,  794 (5th Cir. 2007) (citation omitted); *Stull v. LaPlant*, 411 S.W.3d 129, 135 (Tex. App.   Dallas 2013, no pet.) ("The fiduciary shield doctrine derives from the long-standing principle of contractual liability

that, [i]f a person signs a contract in her corporate capacity, she is not individually a party to the contract.") (quotation marks and citations omitted).

The fiduciary-shield doctrine has its limits. "A corporate officer or employee is not shielded from the exercise of specific jurisdiction as to torts for which the officer or employee may be held individually liable." *Tabacinic v. Frazier*, 372 S.W.3d 658, 669 (Tex. App. Dallas 2013, no pet.) (citation omitted). The fiduciary-shield doctrine "does not protect an officer or employee of a business entity from liability for torts the individual is alleged to have committed while conducting the business of his employer because individuals are liable for the torts they commit." *Stull*, 411 S.W.3d at 135 (citations omitted).

As to specific jurisdiction, "[a] single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis v. Fresne*, 252 F.3d 352, 358-59 (5th Cir. 2001) (citation omitted). Regarding claims based on fraudulent acts, "[i]f a cause of action for fraud committed against a resident of the forum is directly related to the tortious activities that give rise to personal jurisdiction, an exercise of jurisdiction likely comports with the due process clause, given the obvious interests of the plaintiff and the forum state." *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citation omitted).

The court determines that Plaintiff has pleaded sufficient jurisdictional facts against Stark to establish personal jurisdiction and that Stark has failed to negate the basis for personal jurisdiction against him. *See Kelly v. General Interior Const., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010) ("Once the plaintiff has pleaded sufficient jurisdictional allegations, the defendant filing a special appearance bears the burden to negate all bases of personal jurisdiction alleged by the plaintiff. . . . Because the

plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading.").

Plaintiff alleges that Stark committed an intentional fraud against him and that, to perpetrate this fraud, he directed his acts toward Texas.  Specifically, Plaintiff alleges the following: (1) Stark called Plaintiff, who resided in Texas, about selling his student housing business; (2) Stark mailed a letter to Plaintiff and made specific representations regarding the sale of Harries's business;[1] (3) and Stark made additional representations regarding a promissory note that would allow Plaintiff to recoup the borrowed money from Harries's mother's estate trust.  *See* Pl.'s First Am. Compl.  ¶¶ 6-8. Ultimately, these acts are sufficient to confer personal jurisdiction because they give rise to Plaintiff's claims for misrepresentation, negligent misrepresentation, fraud, and fraudulent inducement.  *See Lewis*, 252 F.3d at 359 ("The 'actual content' of [defendants] communications to [plaintiff] shows purposeful availment of the benefits and protections of Texas.") ( citation omitted). Thus, the court determines that Stark had sufficient contacts with Texas to establish specific jurisdiction.

**b.      Fair Play and Substantial Justice**

Because Stark has sufficient minimum contacts with Texas, the court must now determine whether this is one of the rare cases in which the exercise of jurisdiction will not comport with fair play and substantial justice. "Great care and reserve should be exercised when extending our notions of personal jurisdiction into the international field." *Asahi Metal*, 480 U.S. at 115. As previously

---

[1] Defendants contend that Stark clearly sent this letter on behalf of SH Ventures LLC, which is a company that was contemplating the purchase of Plaintiff's business before Defendants formed Campus Evolution. Nonetheless, "[c]orporate agents are individually liable for fraudulent or tortious acts committed while in the service of their corporation." *Tabacinic*, 372 S.W.3d at 668 (citation omitted).

**Amended Memorandum Opinion and Order - Page 8**

stated, there are five factors that the court examines in determining fairness and reasonableness of the exercise of personal jurisdiction. The court addresses each in turn.

With respect to the first factor, the defendants' burden, Stark argues that adjudicating this dispute in Texas would burden him because he is a New York resident and does not have regular contacts with this state. The court, however, determines that Stark would not suffer an undue burden by defending in Texas. Stark acknowledges that he has traveled to Texas to conduct business for Campus Evolution, and Plaintiff asserts that he also committed allegedly tortious acts directed at a Texas citizen.

With respect to the second factor, the forum state's interests, Stark contends that Texas has little interest in this dispute and that all the events giving rise to the dispute occurred in New York, and vital evidence and witnesses are located outside of Texas. This is simply inaccurate. Campus Evolution purchased a business that Harries owned and operated in Texas. *See* Defs.' App. 13, Stark Decl. ¶ 14 ("Back in early 2012, SH Ventures began exploring the possibility of acquiring Plaintiff's student housing business in Texas."). The court determines that Texas has a strong interest in ensuring that its citizens have a forum to seek redress for intentional torts directed at them.

With respect to the third factor, the plaintiff's interest in convenient and effective relief, Defendants contend that Plaintiff would not be prejudiced because he can seek recourse in a New York court. That there are other forums in which Plaintiff may seek convenient and effective relief, however, does not preclude Plaintiff's right to obtain such relief in Texas.

Regarding the fourth factor, the judicial system's interest in efficient resolution of controversies, Defendants did not brief this issue. The court determines, however, that trying this case in Texas encourages efficient resolution of this controversy.

**Amended Memorandum Opinion and Order - Page 9**

With respect to the fifth and final factor, the state's shared interest in furthering social policies, Defendants also did not brief this issue. Nonetheless, the court determines that the state of Texas has a shared interest with Plaintiff in resolving this type of case, as the alleged fraud was perpetrated in Texas and Harries allegedly suffered from the effects in Texas. Because all five factors weigh in favor of Plaintiff, the exercise of jurisdiction over Stark comports with fair play and substantial justice.[2]

Plaintiff has established that Stark has sufficient minimum contacts with Texas and that the exercise of jurisdiction over it comports with fair play and substantial justice. Accordingly, the court has personal jurisdiction over Stark. Based on the court's ruling, it need not determine whether general personal jurisdiction over Stark exists.

### c.    Federal Rule of Civil Procedure 9(b)

Stark additionally contends, however, that Plaintiff's allegations cannot provide the basis for the court's jurisdictional analysis because Plaintiff failed "to plead any facts that could possibly sustain a claim of fraud or misrepresentation." Defs.' Mot. to Dismiss 9. Defendants specifically assert that the Agreement contains a provisions stating that it "constitute[s] the entire agreement between the parties with respect to the subject matter of this Agreement and supersede[s] all prior agreements and understandings, both oral and written, between the parties with respect to the subject matter of this Agreement." *See* Defs.' App. 61, LLC Interest Contribution Agreement Section 10.17. Defendants contend that Plaintiff is, therefore, precluded from relying on any representation made by Stark prior to the Agreement.

---

[2] The court notes that its determination that the exercise of personal jurisdiction comports with fair play and substantial justice does not affect its analysis regarding Defendant's alternative motion to transfer pursuant to the Agreement's forum-selection clause, as discussed in Section III(B) of this opinion.

**Amended Memorandum Opinion and Order - Page 10**

Plaintiff argues that his pleadings satisfy the standards of Rule 9(b).  Plaintiff further counters that Defendants cannot rely on the merger clause in the Agreement because they are not parties or signatories to the contract and the Agreement contains a "no-third party beneficiary" clause that further precludes this argument.  Defs.' App. 60, LLC Interest Contribution Agreement Section 10.10.  Neither party adequately briefed this matter.

As to Defendants' arguments regarding Rule 9(b), as a preliminary matter, the court notes that the case cited by Defendants has been abrogated in subsequent decisions by the same court.  *See Fairchild v. Barot*, 946 F. Supp. 2d 573, 579 (N.D. Tex. 2013) ("The Court has reconsidered this position.").  Ultimately, "courts may rely on affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery to inform the jurisdictional inquiry." *Id.* (quotation marks and citation omitted).  Accordingly, the court determines that there are sufficient allegations regarding Stark's alleged misrepresentations to support the court's conclusion that it has specific jurisdiction over Plaintiff's claims.  Moreover, the court will not engage in a full 12(b)(6) analysis, as Defendants have not so moved.

As to Defendants' argument concerning the merger clause, the court determines that Stark fails to carry his burden to rebut Plaintiff's prima facie case.  Neither side adequately briefed or fully developed their positions, and the court does not have sufficient evidence in the record to make this determination as to the intent of the parties regarding the merger clause and the significance of such a provision on Plaintiff's claims against Stark and Fowler.  As a result, the court determines that Defendants have not rebutted Plaintiff's prima facie case establishing specific jurisdiction over Stark.  Because the court determines that it has jurisdiction over Stark, it will also address Defendants'

argument regarding *forum non conveniens* after it completes its jurisdictional analysis with respect to Fowler.

### 2.     Fowler

The court determines that it lacks jurisdiction over Fowler because Plaintiff does not allege any conduct sufficient to establish minimum contacts in the forum state.  In other words, Plaintiff makes no allegations that Fowler has contacts with Texas that are continuous and systematic, to establish general jurisdiction, or that directly relate to the causes of actions asserted, to establish specific jurisdiction.

The fiduciary duty doctrine protects Fowler from the court's exercise of general jurisdiction. *Camac v. Dontos*, 390 S.W.3d 398, 411 (Tex. App.   2012, no pet.) ("[A] nonresident corporate officer or employee is protected from the trial court's exercise of general jurisdiction over him when his only contacts with Texas were made on behalf of his employer.") (citation omitted).

Likewise, there are no allegations to support the application of specific jurisdiction.  More precisely, Plaintiff does not allege that Fowler directed any of his conduct toward Texas or made any representations to Harries.  Instead, Plaintiff contends that Stark made representations on behalf of Fowler.  The only mention in Plaintiff's Amended Complaint of any conduct committed by Fowler relates to Campus Evolution's decision to terminate Plaintiff.  Specifically, Plaintiff alleges that Harries responded to an e-mail solicitation and that Mr. Shane Gager, a real estate broker and nonparty in this suit, forwarded Harries's response to Fowler.  As a result, Plaintiff contends that Fowler accused Harries of competing with Campus Evolution and used this incident as an excuse to terminate Harries from Campus Evolution.  Ultimately, Plaintiff fails to allege that his claims for

fraud and misrepresentations arise from Fowler's contacts with Texas and, therefore, fails to raise a prima facie case for specific jurisdiction.

"If the plaintiff fails to plead facts bringing the defendant within reach of the long-arm statute (i.e., for a tort claim, that the defendant committed tortious acts in Texas), the defendant need only prove that it does not live in Texas to negate jurisdiction." *Kelly*, 301 S.W.3d at 658-59 (citation omitted).

Because Plaintiff failed to plead jurisdictional facts with respect to Fowler, Fowler need only establish that he does not live in Texas to negate the basis for jurisdiction, and the court determines that he has met this burden. *See* Defs.' App. 1, Fowler Decl. ¶¶ 3-5 ("I am resident of the State of New York[;]" "I have never lived in the State of Texas[;]" and "I do not conduct any business in the State of Texas in my individual capacity."). Since Plaintiff's pleadings lack allegations regarding Fowler's contacts with Texas, Fowler sufficiently negated the jurisdictional bases alleged by Plaintiff, and Harries has not presented any evidence to the contrary. Accordingly, the court determines that it lacks personal jurisdiction over Fowler.

In his response, Plaintiff requests leave for discovery of jurisdictional facts. Because the court determines that it lacks jurisdiction over Fowler, it will now address this request. "Discovery on matters of personal jurisdiction . . . need not be permitted unless the motion to dismiss raises issues of fact." *Wyatt v. Kaplan*, 686 F.2d 276, 284 (5th Cir. 1982) (citation omitted). "When the lack of personal jurisdiction is clear, discovery would serve no purpose and should not be permitted." *Id.*

The court will not grant Plaintiff's request to conduct discovery of jurisdictional facts. As to specific jurisdiction, the court determines that any representation made by Fowler that gave rise

to the cause of actions asserted were known by Plaintiff at the time of filing this action. Therefore, discovery would not serve a purpose for establishing specific jurisdiction.

Plaintiff additionally argues that it seeks to develop facts to support a finding of general jurisdiction. Plaintiff argues that additional discovery will reveal Defendants' efforts to purchase property, their visits to the state, and their engagement of various vendors in Texas. Plaintiff, however, does not specifically refer to any of Fowler's contacts with Texas or why he believes additional discovery would establish general jurisdiction over Fowler. Moreover, Fowler submitted a declaration in which he states that he is a resident of New York; that he does not conduct any business in Texas in his individual capacity; that he does not maintain a registered agent in Texas; that he does not own any personal or real property in Texas; that he does not maintain any bank accounts in Texas; and that he does not maintain a telephone listing in Texas. Defs.' App. 1-2, Fowler Decl. ¶¶ 3-10.

Plaintiff additionally argues that discovery would provide information regarding an alter ego theory of piercing the corporate veil. Plaintiff, however, makes no mention of piercing the corporate veil or recovering under a theory of alter ego, and the Amended Complaint is devoid of any allegations to support an alter ego theory of liability. Considering Plaintiff's pleadings, the arguments of the parties, and the record before it, the court determines that discovery will serve no purpose and will not be permitted. As a result, the court determines that it lacks jurisdiction over Fowler and will dismiss Plaintiff's claims against him.

### B.    *Forum Non Conveniens*

Defendants additionally argue, in the alternative, that this action should be transferred to New York pursuant to a forum-selection clause in the Agreement between Plaintiff and Campus

Evolution. Since the court determined that it has jurisdiction over Stark and lacks jurisdiction over Fowler, it will address this argument with respect to Stark only.

### 1. Equitable Estoppel

As a preliminary matter, the court must first determine whether the forum-selection clause applies to the claims against Stark, since he did not sign the Agreement. The court ordered additional briefing on this matter and has received the parties' submissions. Stark argues he can enforce the forum-selection clause in the Agreement under a theory of equitable estoppel. Plaintiff contends that equitable estoppel does not apply and that the Agreement precludes third-party reliance on the contract's provisions. *See* Defs.' App. 43, Ex. A (Section 10.10 <u>No- Third Party Beneficiaries.</u> Except as provided in Article IX, this Agreement is not intended to confer *any rights or remedies upon any Person* other than the parties to this Agreement.").

The court determines that equitable estoppel applies, and, therefore, Stark can enforce the Agreement's forum-selection clause against Plaintiff. In *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir.2000), the Fifth Circuit adopted the intertwined-claims doctrine, which allows a nonsignatory to compel arbitration against a signatory to a contract under two circumstances. First, a nonsignatory can bind a signatory when the signatory "must rely on the terms of the written agreement in asserting its claims against the nonsignatory." *Grigson*, 210 F.3d at 527 (quotations omitted); *see also Harland Clarke Holdings Corp. v. Milken*, 997 F. Supp. 2d 561, 583 (W.D. Tex. 2014) ("When a party sues under an agreement, it has sufficiently embraced the agreement to be bound by a forum-selection clause therein, even with regard to its claims against a

non-signatory . . . .") (citation omitted).[3]  "When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate." *Grigson*, 210 F.3d at 527 (citation omitted).

Subsequent to *Grigson*, the Fifth Circuit has clarified that, to satisfy the first test, it is not enough that "a plaintiff's claims 'touch matters' relating to the arbitration agreement, the claims are not arbitrable unless the plaintiff relies on the agreement to establish its cause of action." *Hill v. G.E. Power Sys., Inc.*, 254 F. App'x 426, 431-32 (5th Cir. 2007).  Thus, the plaintiff's complaint "must rely on the express terms of the written agreement" for a nonsignatory to bind a signatory to an arbitration agreement under the first test set forth by *Grigson*.  *Palmer Ventures LLC v. Deutsche Bank AG*, 254 F. App'x 426, 431 (5th Cir. 2007).

The second set of circumstances by which a nonsignatory can bind a signatory occurs when "the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract." *Grigson*, 210 F.3d at 527-28 (citation omitted); *see also Palmer Ventures*, 254 F. App'x at 432 ("Key to the decision in *Brown* was the fact that none of the claims against the non-signatories could be considered without analyzing the 'tortious acts' of the

---

[3] While *Grigson* involves an arbitration clause, the Fifth Circuit has recognized that, "in relevant aspects, there is little difference between arbitration clauses and traditional forum-selection clauses," and the court notes that Plaintiff does not assert that *Grigson* is wholly inapplicable to this case but, instead, argues that neither of the circumstances set forth by *Grigson* that permit the court to apply equitable estoppel are applicable to the facts of this case.  *Haynsworth v. The Corp.*, 121 F.3d 956, 963 (5th Cir. 1997) (quotation marks and citation omitted); *see also Vartec Telecom, Inc. v. BCE Inc.*, No. 02-2585, 2003 WL 22364302, at *2 (N.D. Tex. Oct. 9, 2003) ("[I]n light of the parties' agreement that *Grigson* applies, the similarity between arbitration clauses and forum selection clauses, and the equitable underpinnings for applying *Grigson* to forum selection clauses, the Court will apply *Grigson* to determine whether Defendants may enforce the [contract's] forum selection clause.").

signatories.").  Ultimately, each case turns on its own facts, and equitable estoppel is "much more readily applicable when the case presents both independent bases . . . for applying the intertwined claims doctrine." *Grigson*, 210 F.3d at 527-28.

As to the first basis for applying equitable estoppel, the court determines that Plaintiff's claims rely on the terms of the Agreement.  Plaintiff alleges claims for (1) misrepresentations and/or negligent misrepresentations; (2) fraud/fraud in the inducement; (3) negligence; and (4) unjust enrichment and/or quantum meruit.  While Plaintiff's claims sound in tort and not contract law, the court determines that the claims nevertheless rely on the terms of the Agreement, given the circumstances of this case. *See Vartec Telecom, Inc. v. BCE Inc.*, No. 02-2585, 2003 WL 22364302, at *2-3 (N.D. Tex. Oct. 9, 2003) (holding that the plaintiff's claims for securities fraud relied on the terms of the contract containing a forum-selection clause and therefore defendant, as a nonsignatory, could bind plaintiff to the terms of the forum-selection clause).  In *Vartec*, the court applied equitable estoppel because the plaintiffs' "claims [were] premised on the [signatories'] breach of the [contract] and "because [p]laintiff's damages [were] calculated with reference to the [contract]."  2003 WL 22364302 at * 4.

The same circumstances that allowed the court in *Vartec* to apply equitable estoppel are present in this case.  Plaintiff alleges that:

> Stark and Fowler's plan was to do the following: a.) contact a Texas resident engaged in student housing to get their foot into the business; b.) convince and induce the Texas resident to sell their [sic] student housing business to Stark and Fowler; c.) *use a business entity* [Campus Evolution] for the purchase in order to insulate Stark and Fowler from individual liability for this fraud; d.) make representations to the Texas resident to induce the resident into signing a contract with the L.L.C., turning over ownership of the student housing business; e.) allowing the Texas resident to "stay on" in the business of student housing for a short amount of time, in order that the fraud would not be immediately discovered; f.) find an incident to which they could

use to "terminate" the Texas resident and refuse to follow through on their representations.

Pl.'s Am. Compl. ¶ 5 (emphasis added).  Plaintiff's Amended Complaint describes the creation of Campus Evolution as a necessary step for perpetrating the alleged fraud.  More importantly, if Plaintiff never sold his business to Campus Evolution pursuant to the Agreement, he would have no claims to assert against Stark, as his alleged injury resulted from the sale of his business to Campus Evolution.

Plaintiff's reliance on the terms of the Agreement is further demonstrated by the relief he seeks in his Amended Complaint.  As a result of the alleged fraud perpetrated by Stark, Plaintiff seeks the "return of the entire student housing business and company to Harries, invalid[at]ing all of Stark and Fowler's ownership of Harries' student housing business."  Pl.'s Am. Compl. ¶ 29. Stark and Fowler, however, do not own Plaintiff's student housing business   Campus Evolution does.  Therefore, to provide Plaintiff with the relief he requests, the court must rely on the Agreement between Plaintiff and Campus Evolution.

While some cases have asserted the proposition that "[a] fraud claim, by its nature, does not depend on the terms of a contract," *Vartec* applied equitable estoppel even when the plaintiff only alleged claims for common law and statutory securities fraud. *Vinewood Capital, LLC v. Sheppard Mullin Richter & Hampton, LLP*, 735 F. Supp. 2d 503 (N.D. Tex. 2010) (citation omitted); *see also Vartec*, 2003 WL 22364302 at *1.  Therefore, this proposition is not a categorical rule, and it does not apply to the facts of this case, especially when the court considers the relief sought by Plaintiff. *See Grigson*, 210 F.3d at 527 ("Each case, of course, turns on its facts.").  Ultimately, Plaintiff's claims "arise out of or relate to" the terms of the Agreement and, thus, satisfy the first requirement outlined in *Grigson*.  210 F.3d at 527.

**Amended Memorandum Opinion and Order - Page 18**

There is an even stronger case for applying the second basis for equitable estoppel set forth in *Grigson*. Plaintiff, a signatory to the Agreement containing an arbitration clause, raises allegations of substantially interdependent and concerted misconduct by both Stark, a nonsignatory to the Agreement, and Campus Evolution, a signatory to the Agreement.

The alleged actions taken by Stark and Fowler, by themselves and in their individual capacities, do not support Plaintiff's claims against them; rather, Plaintiff's claims are dependent on actions taken by Campus Evolution. Campus Evolution employed and fired Plaintiff. *See* Pl.'s Am. Compl. ¶ 13 ("Harries was removed from the Campus Evolution website, was terminated at Campus Evolution, was notified that his entire interest in Campus Evolution was being confiscated by Stark and that he was under capricious and continued threat of further action by Stark, Fowler, and the company."). Plaintiff was allegedly promised that he would have an ownership interest in Campus Evolution, that he would be a member of the Executive committee, and that Stark would make payments to Harries if he signed the Agreement with Campus Evolution. *Id.* ¶ 19. Plaintiff also alleges that "the fraud did no[t] stop after the LLC Interest Contribution Agreement was signed." *Id.* ¶ 23.

Plaintiff seeks to rescind the sale of his student housing business to Campus Evolution; however, the student housing business is not owned by Stark or Fowler in their individual capacities. Plaintiff makes this request without suing the other party to the Agreement, Campus Evolution. By suing only Stark and Fowler and not Campus Evolution, while also requesting that the court invalidate the LLC Contribution Agreement, Plaintiff acknowledges the interdependent and concerted misconduct by Stark and Campus Evolution. In light of the alleged concerted actions

between Stark and Campus Evolution, Plaintiff is estopped under the second theory set forth in *Grigson*.

The court determines that it is appropriate to apply equitable estoppel under the facts of this case. *Grigson* only requires "one of the two independent bases to be present when compelling arbitration." *Positive Software Solutions, Inc. v. New Century Mortgage Corp.*, 259 F. Supp. 2d 531, 540 (N.D. Tex. 2003) (holding that the first basis for courts to apply equitable estoppel did not apply but that "[t]he second basis . . . [was] fully applicable to the facts of this case."). The facts of this case strongly support the court's application of equitable estoppel under the second basis set forth in *Grigson*. In any event, the court has already determined that the first set of circumstances described in *Grigson* is also present and, therefore, its application of equitable estoppel is "is much more readily applicable." *Grigson*, 210 F.3d at 527.

The court, additionally, does not find Plaintiff's arguments regarding the Agreement's "no third-party beneficiary" clause persuasive. Equitable estoppel is a theory by which *nonsignatories* bind signatories to a contract pursuant to the arbitration clause therein contained; therefore, if the court accepts Plaintiff's interpretation of the Agreement's "no third-party beneficiary" clause, it would vitiate the doctrine of equitable estoppel and the principles of fairness it seeks to protect. "The linchpin for equitable estoppel is equity    fairness." *Id.* at 528-29. Plaintiff cannot "have it both ways: [he] cannot, on the one hand, seek to hold the [Stark] liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but, on the other hand, deny arbitration's applicability because the defendant is a non-signatory." *Id.* at 528. Plaintiff is seeking to rescind the sale of his student housing business to Campus Evolution without ever suing Campus Evolution and without being bound by the terms of the Agreement through which he sold his business. Equity

and fairness dictate that equitable estoppel should apply.  Accordingly, the court will apply equitable

estoppel and allow Stark, as a nonsignatory to the Agreement, to bind Plaintiff, a signatory, to the

forum-selection clause contained in the Agreement.  After determining that Plaintiff is bound by the

forum-selection clause as it applies to his claims against Stark, the court must determine whether

transfer is appropriate.  *See* 28 U.S.C. § 1404(a).

### 2. Whether Transfer is Appropriate

The Agreement contains a forum-selection clause, stating that "any suit, action or proceeding

seeking to enforce any provision of, or based on any matter arising out of or in connection with, this

Agreement . . . shall be brought in the United States District Court for the Southern District of New

York or any New York State court sitting in [N]ew York County . . . ."[4] Def.'s App. 59, Agreement

Section 10.4, Ex. B.[5]

"[A] valid forum-selection clause [should be] giving controlling weight in all but the most

exceptional cases."  *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the Western Dist. of

Texas*, 134 S. Ct. 568, 581 (2013).  The existence of a valid forum-selection clause alters the typical

---

[4] The forum-selection clause continues:

> and that any cause of action arising out of this Agreement or the Ancillary Agreements or the
> transactions contemplated hereby or thereby shall be deemed to have arisen from a transaction of
> business in the State of New York, and each of the parties hereby irrevocably consents to the
> jurisdiction of such courts (and of the appropriate appellate courts therefrom) in any such suit, action
> or proceeding and irrevocably waives, to the fullest extent permitted by law, any objection that it may
> now or hereafter have to the laying of the venue of any such suit, action or proceeding in any such
> court or that any such suit, action or proceeding which is brought in any such court has been brought
> in an inconvenient forum.

Def.'s App. 59, Agreement Section 10.4, Ex. B.

[5] The court notes that § 1404 applies when the forum-selection clause provides for transfer to another federal
district court and that *forum non conveniens* applies when the clause points to a state or foreign forum. *Atlantic Marine*,
134 S. Ct. at 580.  In any event, "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for
the subset of cases in which the transferee forum is within the federal court system . . . ." *Id.*

§ 1404 analysis, and the "practical result is that forum-selection clauses should control except in unusual circumstances." *Id.* at 582.   This is because "[t]he presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Id.* at 581. First, the court affords the plaintiff's choice of forum no merit; second, the court does not consider the parties' private interests; and third, "a transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.* at 581-82.

"As a consequence, a district court may consider arguments about public-interest factors only," and "those factors will rarely defeat a transfer of motion." *Id.* (citation omitted).   The public interest factors to be considered by a court when reviewing a claim of *forum non conveniens* include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *In re Volkswagen*, 545 F.3d 304, 315 (5th Cir.2008).   The court determines that the public interest factors do not defeat Stark's motion for transfer.   Plaintiff has, at most, set forth facts to establish that this court has a local interest in considering the case because he is a Texas resident and conducts business in Texas.   This argument is insufficient to sustain Plaintiff's burden to demonstrate that public interest factors "overwhelmingly disfavor" transfer to New York under the forum-selection clause.   In light of these considerations, the court does not believe that an unusual or exceptional case exists and will, accordingly, enforce the Agreement's forum-selection clause and transfer this case.

IV.     **Conclusion**

For the reasons herein stated, the court **determines** that Stark has sufficient contacts with the State of Texas to establish specific jurisdiction and **denies** Defendants' Motion to Dismiss For Lack of Personal Jurisdiction as to Andrew Stark.   The court further **determines** that Fowler lacks sufficient contacts with the State of Texas to establish general or specific jurisdiction over him. Accordingly, the court **grants** Defendants' Motion to Dismiss For Lack of Personal Jurisdiction as to Nathaniel Fowler.

The court determines that, in light of the forum-selection clause in the Agreement, transfer under § 1404 is appropriate.   Accordingly, the court **grants** Defendants' Alternative Motion to Transfer on *Forum Non Conveniens Grounds* and **transfers** this case to the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1404(a).[6]   The clerk of court shall provide an electronic copy of this Amended Memorandum Opinion and Order to the Southern District of New York.

**It is so ordered** this 28th day of July, 2015.

*Sam A. Lindsay*
Sam A. Lindsay
United States District Judge

---

[6] Defendants label their alternative motion as one for transfer under a theory of *forum non conveniens*.  The forum -selection clause allows for transfer to the Southern District of New York or a state court in New York; however, Defendants engage in a § 1404(a) analysis and requests that the court transfer this case to the Southern District of New York.  As Defendants engaged in a § 1404 (a) analysis, the proper transfer is to the United States District Court for the Southern District of New York.